**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON SHURB, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:13-cv-00271 |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON– | § | |
| SCHOOL OF MEDICINE, *et al.*, | § | |
| Defendants. | § | |

---

**STATE DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense
Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division

DARREN G. GIBSON
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
Darren.Gibson@texasattorneygeneral.gov

**ATTORNEYS FOR THE STATE
DEFENDANTS**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................... iv

I.    NATURE AND STAGE OF PROCEEDINGS ................................................1

II.   STATEMENT OF ALLEGED FACTS ...........................................................3

III.  STATEMENT OF THE ISSUES......................................................................6

IV.   SUMMARY OF THE ARGUMENT ...............................................................7

V.    ARGUMENT AND AUTHORITY ..................................................................9

      A.    Shurb's alleged facts do not plausibly suggest that UTHealth engaged
            in disability discrimination in violation of Title II of the ADA or the
            Rehabilitation Action ...........................................................................9

      B.    Shurb's claims against UTHealth for breach of contract and for
            alleged violations of Chapter 321 of the Texas Health & Safety Code
            are barred by sovereign immunity. .....................................................14

      C.    Shurb's tort claims against UTHealth and the Individual Defendants
            in their official capacities are barred by the Texas Tort Claims Act. ................15

      D.    UTHealth and the Individual Defendants in their official capacities
            are immune from § 1983 claims and are not "persons" who can be
            held liable under the statute. ..............................................................16

      E.    Shurb fails to state a plausible constitutional violation to support
            his § 1983 claims. ...............................................................................18

            1.    Shub received all the process he was due in connection with his
                  dismissal from the program .................................................18

            2.    Shurb's allegations indicate a rational basis for the Individual
                  Defendants' actions, which defeats his substantive due process
                  claim......................................................................................21

            3.    Shurb fails to allege a plausible class-of-one equal protection claim.......22

      F.    Shurb's tort claims against the Individual Defendants in their individual capacities
            are barred by Section 101.106(e) of the Texas Tort Claims Act. ..........................24

VI.    CONCLUSION........................................................................................................25

CERTIFICATE OF SERVICE ......................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Alcala v. Texas Webb County*,
620 F. Supp. 2d 795 (S.D. Tex. 2009) ........................................................................ 15

*Aragona v. Berry*,
2012 WL 467069 (N.D.Tex. Feb. 14, 2012) .......................................................... 12, 13

*Baker v. Univ. of Tex. Health Science Center Houston*,
2011 WL 1549263 (S.D.Tex. Apr. 21, 2011) ............................................................ 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 6, 7

*Bennett–Nelson v. La. Bd. of Regents*,
431 F.3d 448 (5th Cir. 2005) ...................................................................................... 10

*Bisong v. University of Houston*,
2006 WL 2414410 (S.D.Tex. Aug. 18, 2006) ............................................................ 14

*Bissessur v. Ind. Univ. Bd. of Trustees*,
No. 1:07-CV-1290, 2008 WL 4274451 (S.D. Ind. Sept. 10, 2008) ............................ 23

*Bd. of Curators of the Univ. of Mo. v. Horowitz*,
435 U.S. 78 (1978) ..................................................................................... 8, 18, 19, 20, 21

*Burkett v. City of El Paso*,
513 F. Supp. 2d 800 (W.D. Tex. 2007) ....................................................................... 15

*Ceasar v. Holt*,
245 Fed. Appx. 396 (5th Cir. 2007) ............................................................................ 20

*City of Cleburne v. Cleburne Living Center, Inc.*,
473 U.S. 432 (1985) .................................................................................................... 22

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................................ 6

*D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*,
629 F.3d 450 (5th Cir. 2010) ...................................................................................... 10

*Davis v. Mann*,
882 F.2d 967 (5th Cir. 1989) ...................................................................................... 20

*Edelman v. Jordan*,
415 U.S. 651 (1974) .................................................................................................... 16

*Engquist v. Oregon Dept. of Agr.*,
553 U.S. 591 (2008) .......................................................................................... 9, 22, 23

*Evans v. City of Marlin, Tex.*,
986 F.2d 104 (5th Cir. 1993) ...................................................................................... 18

*Fan v. Brewer*,
2009 WL 1743824 (S.D.Tex. June 17, 2009) ............................................................ 24

*Federal Sign v. Texas S. Univ.*,
   951 S.W.2d 401 (Tex. 1997) ............................................................. 14

*FM Prop. Operating Co. v. City of Austin*,
   93 F.3d 167 (5th Cir. 1996) .............................................................. 21

*Forgan v. Howard Co., Tex.*,
   494 F.3d 518 (5th Cir. 2007) ............................................................ 15

*Frame v. City of Arlington*,
   657 F.3d 215 (5th Cir. 2011) ..................................................... 11, 13

*Garner v. Chevron Phillips Chem. Co.*,
   834 F.Supp.2d 528 (S.D.Tex. 2011) ................................................ 10

*General Services Com'n v. Little-Tex Insulation Co., Inc.*,
   39 S.W.3d 591 (Tex. 2001) ............................................................... 14

*Goss v. Lopez*,
   419 U.S. 565 (1975) .......................................................................... 19

*Hale v. King*,
   642 F.3d 492 (5th Cir. 2011) ....................................................... 7, 10

*Heike v. Guevara*,
   No. 10–1728, 2013 WL 1092737 (6th Cir. Mar. 18, 2013) ............. 23

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) ........................................................... 6

*Hughes v. Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir. 2001) ........................................................ 6, 7

*Iqbal v. Ashcroft*,
   556 U.S. 662 (2009) ............................................................................ 7

*Kentucky v. Graham*,
   473 U.S. 159 (1985) .......................................................................... 17

*Kermode v. Univ. of Miss. Med. Center*,
   496 Fed.Appx. 483 (5th Cir. 2012) ............................................. 8, 17

*Loulseged v. Akzo Nobel Inc.*,
   178 F.3d 731 (5th Cir. 1999) ............................................................ 12

*Melton v. Dallas Area Rapid Transit*,
   391 F.3d 669 (5th Cir. 2004) ............................................................ 10

*Mission Consol. Indep. School Dist. v. Garcia*,
   253 S.W.3d 653 (Tex. 2008) ......................................................... 9, 25

*Moulton v. City of Beaumont*,
   991 F.2d 227 (5th Cir. 1993) ............................................................ 21

*Nofsinger v. Virginia Comm. Univ.*,
   No. 3:12–CV–236, 2012 WL 2878608 (E.D.Va. July 13, 2012) ............ 23

*Nueces County v. Ferguson*,
  97 S.W.3d 205 (Tex. App.–Corpus Christi 2002, no pet.) ............................................ 7, 15, 16

*Olivier v. Univ. of Texas Sys.*,
  988 F.2d 1209, 1993 WL 81990 (5th Cir. Mar. 9, 1993)........................................ 17

*Pace v. Bogalusa City Sch. Bd.*,
  403 F.3d 272 (5th Cir. 2005) ..................................................... 10

*Pastorek v. Trail*, 248 F.3d 1140,
  2001 WL 85921(5th Cir. Jan. 26, 2001) ..................................................... 17

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ..................................................... 16

*Perez v. Region 20 Educ. Serv. Ctr.*,
  307 F.3d 318 (5th Cir. 2002) ..................................................... 16

*Prairie View A & M Univ. v. Dickens*,
  243 S.W.3d 732 (Tex.App.-Houston [14th Dist.] 2007) ..................................................... 14

*Retzlaff v. de la Vina*,
  606 F.Supp.2d 654 (W.D.Tex. 2009)..................................................... 24

*Ridha v. Tex. A&M Univ. Sys.*,
  Civ. A. No. 4:08-CV-2814, 2009 WL 1406355 (S.D.Tex. May 15, 2009) ............................ 17

*Scooter v. Univ. Texas San Antonio*,
  508 F.3d 812 (5th Cir. 2007) ..................................................... 18

*Shaboon v. Duncan*,
  252 F.3d 722 (2001)..................................................... 7, 9, 12, 20, 21, 24

*Simi Inv. Co., Inc. v. Harris County, Tex.*,
  236 F.3d 240 (5th Cir. 2000) ..................................................... 21

*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir. 2000) ..................................................... 6

*Stem v. Ahearn*,
  908 F.2d 1 (5th Cir. 1990) ..................................................... 17

*Stockman v. Fed. Election Comm'n*,
  138 F.3d 144 (5th Cir. 1998) ..................................................... 6

*Stotter v. University of Texas at San Antonio*,
  508 F.3d 812 (5th Cir. 2007) ..................................................... 24

*Tex. Dep't of Criminal Justice v. Miller*,
  51 S.W.3d 583 (Tex. 2001)..................................................... 15

*Tex. Nat. Resource Cons. Com'n v. IT-Davy*,
  74 S.W.3d 849 (Tex. 2002)..................................................... 7, 14

*Texas Dept. of Family and Protective Services v. Atwood*,
  176 S.W.3d 522 (Tex. App.–Houston [1 Dist.] 2004)..................................................... 7, 8, 16

*U.S. v. Texas Tech Univ.*,
    171 F.3d 279 (5th Cir. 1999) ............................................................ 16

*United States v. Georgia*,
    546 U.S. 151 (2006) ......................................................................... 13

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) .................................................................... 22, 24

*West v. Atkins*,
    487 U.S. 42 (1988) ........................................................................... 18

*Wheeler v. Miller*,
    168 F.3d 241 (5th Cir. 1999) ............................................................ 20

*Whiting v. Univ. of So. Miss.*,
    451 F.3d 339 (5th Cir. 2006) ........................................................ 9, 24

*Wichita Falls State Hosp. v. Taylor*,
    106 S.W.3d 692 (Tex. 2003) ......................................................... 7, 14

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989) .................................................................. 8, 17, 18

*Yan v. Penn State Univ.*,
    No. 4:10–CV–00212, 2010 WL 3221828 (M.D.Pa. Aug. 13, 2010) ........................................ 23

**Statutes**

28 C.F.R. § 35.130(b)(7) ....................................................................... 12, 13

29 U.S.C. § 794a ................................................................................... 1, 9

34 C.F.R. § 104.44(a) .......................................................................... 12, 13

42 U.S.C. § 12101, *et. seq.* .................................................................... 1

42 U.S.C. § 12102 ................................................................................. 10

42 U.S.C. § 12132 ................................................................................... 9

42 U.S.C. § 1983 ................................................................................ 2, 18

Tex. Civ. Prac. & Rem. Code § 101.106 ................................................. 9, 25

Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.057 ................................. 8, 15

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................... 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON SHURB, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:13-cv-00271 |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON– | § | |
| SCHOOL OF MEDICINE, *et al.*, | § | |
| Defendants. | § | |

**STATE DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

TO THE HONORABLE KENNETH M. HOYT:

Defendants The University of Texas Health Science Center at Houston ("UTHealth"), Dr. Guiseppe N. Colasurdo, Dr. Margaret C. McNeese, and Patricia E. Caver (collectively, the "State Defendants") file this Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      NATURE AND STAGE OF PROCEEDINGS

This case arises out of Plaintiff Jason Shurb's enrollment at and ultimate withdrawal from UTHealth's Medical School. Shurb alleges that he is a person with a disability and that Defendants took certain actions related to his disability that resulted in his withdrawal from the Medical School in the fall of 2011 and a delay in his medical education. (Doc. 7, Am. Complt. ¶¶ 2-7.) Based on these allegations, Shurb brings claims against UTHealth under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a (the "Rehabilitation Act"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* (the "ADA"); and the Texas patient's bill of rights,

1

as adopted in Chapter 321 of the Texas Health & Safety Code ("Chapter 321"). Shurb also asserts common law claims for breach of contract, intentional infliction of mental distress, and negligent hiring against UTHealth. (Doc. 7 ¶¶ 78-96, 103-121.) In addition, Shurb has named three UTHealth administrators as defendants in both their individual and official capacities—Dr. Guiseppe N. Colasurdo, Dean of the Medical School;[1] Dr. Margaret C. McNeese, Associate Dean for Admissions & Student Affairs; and Patricia E. Caver, Director of Admissions & Student Affairs (collectively, the "Individual Defendants"). Shurb asserts claims against the Individual Defendants under 42 U.S.C. § 1983 ("§ 1983") for alleged violations of his constitutional rights to procedural due process, substantive due process, and equal protection. (Doc. 7 ¶¶ 121-143.) Shurb also asserts a claim for intentional infliction of mental distress against the Individual Defendants. (Doc. 7 ¶¶ 108-113.) Finally, Shurb asserts claims against Methodist Hospital (which has appeared and answered), which are not addressed by this motion.

Shurb filed suit on February 4, 2013, and filed an amended complaint on February 14, 2103. (Doc. 1, 7.) This motion is the State Defendants' first responsive pleading.[2] In addition, the State Defendants are concurrently filing an unopposed motion to stay discovery of this case pending a ruling on this motion and the Individual Defendants' assertion of qualified immunity.

On April 18, 2013, the parties held a Rule 26(f) conference in accordance with the Court's Order for Conference. (Doc. 6.) As reflected in the parties Joint Status Report, the parties have agreed to stay discovery pending a ruling on this motion, and therefore do not believe that it is necessary to proceed with the initial scheduling conference set for May 6, 2013. (Doc. 18.)

---

[1] Dr. Colasurdo is the President of UTHealth as well as the current Dean of the Medical School. Plaintiff's claims appear to be brought against Dr. Colasurdo in his capacity as Dean.

[2] The State Defendants have also filed their certificate of interested parties. (Doc. 14.)

By this motion, the State Defendants seek to dismiss Shurb's claims for lack of jurisdiction under Rule 12(b)(1) based on sovereign immunity and the Eleventh Amendment and for failure to state a claim under Rule 12(b)(6).

## II.   STATEMENT OF ALLEGED FACTS

Shurb enrolled at the UTHealth Medical School in the fall of 2009 and, at the advice of UTHealth administrators, participated in the Alternative Pathway program, which splits the first year of medical school into two years. Shurb alleges that, as a result of his participation in this program, UTHealth was aware of his mental health conditions, including "Obsessive Compulsive Disorder, Severe Anxiety leading to occasional panic attacks, Major Depressive Disorder and a history of migraines." (Doc. 7 ¶¶ 25-26.)

Shurb alleges that in the fall of 2010, one of his professors refused to provide Shurb "access to power point presentations from class to provide the visual reinforcement he required to pass the class." (Doc. 7 ¶ 29.) In October 2010, Shurb reached out to Dr. Colasurdo for assistance in obtaining these visual aids, but Dr. Colasurdo allegedly did not respond to these emails. (*Id.* ¶¶ 30-32.) Shurb's mother then sent a letter to Dr. Colasurdo asking for assistance on her son's behalf. In a letter dated November 24, 2010, Dr. Colasurdo directed Shurb and his mother to the Office of Student Affairs. (*Id.* ¶¶ 33-35.) Shurb claims that, by these actions, Dr. Colasurdo "failed to address any of Shurb's needs for accommodation." (*Id.* ¶ 35.)

Shurb alleges that his anxiety worsened and he took a medical leave of absence for the fall 2010 semester after conferring with Dr. Sheela L. Lahoti, Assistant Dean for Admissions & Student Affairs. (Doc. 7 ¶ 36.) At UTHealth's request, Shurb authorized his treating psychiatrist, Dr. Joyce Davidson, to speak with Student Affairs regarding his condition, and Dr. Davidson at

3

some point provided a letter to UTHealth stating that Shurb was fit to resume his classes the following fall. (*Id.* ¶ 37.)

After Shurb resumed classes in the fall of 2011, he allegedly became "severely ill, convulsing, unable to walk without assistance, and unable to drink even water without vomiting." (Doc. 7 ¶ 39.) After visiting a 24-Hour Urgent Care Center, Shurb was admitted to Methodist Hospital, where his treating physician, Dr. Lindsay Waters, accused Shurb of attempting suicide by drinking antifreeze. (Doc. 7 ¶¶ 40-44.) The Methodist physicians recommended that Shurb be seen by a psychiatrist and communicated with Dr. Davidson, Shurb's treating psychiatrist. (*Id.*) Shurb alleges that Dr. Waters communicated with UTHealth "regarding Shurb's confidential educational, medical and mental health records." (*Id.* ¶ 45.)

After being released from Methodist, Shurb contacted Dr. Lahoti at the Medical School regarding returning to classes. Dr. Lahoti requested both a medical release form relating to his hospital stay and a note from Shurb's treating physician. (Doc. 7 ¶¶ 54-61.) Although Shurb provided Dr. Lahoti portions of his hospital discharge paperwork, he did not provide the requested documents. On September 30, 2011, Shurb received an email that Dr. Lahoti wanted to meet with him that afternoon. Despite repeated requests, Shurb did not meet with Dr. Lahoti, as requested. (*Id.* ¶ 62.) "[B]elieving he had clearance to resume attending classes, Shurb attended classes starting September 21, 2011, through October 7, 2011." (*Id.* ¶ 61.)

On October 7, 2011, Shurb was "escorted out of class by a representative of Student Affairs," and brought to a meeting with Dr. McNeese, Dr. Lahoti, and Ms. Caver. At this time, Shurb was again informed of the conditions of his being allowed to return to classes, including a full release of his medical record relating to his recent hospitalization to UTHealth; attending follow-up appointments with his psychiatrist, Dr. Davidson, and other doctors; and providing

authorization forms for the use and disclosure of health information. According to Shurb, Dr. McNeese stated that the rationale for these actions was to protect UTHealth "and other students from [Shurb]." (Doc. 7 ¶ 64.)

Again, Shurb did not provide the requested documentation. Rather, on October 10, 2011, Shurb and his mother met with Dr. McNeese, Dr. Lahoti and Ms. Caver. At the start of the meeting, Shurb's mother took out a tape recorder and informed the attendants that she "thought it wise to audiotape the meeting." At that time, McNeese, Lahoti and Caver refused to continue the meeting without legal representation, who was unavailable at that time. (Doc. 7 ¶ 66.) Shurb and his mother then met with Dr. Colasurdo, who "informed Shurb and his mother that he left such situations to the Student Affairs Office" and instructed his assistant to arrange a meeting the following day with UTHealth's legal counsel. (*Id.* ¶ 67.)

Shurb and his mother then met with UTHealth's in-house attorney the following day. UTHealth's counsel reiterated to Shurb that, to effect his return to classes, according to the requirements set by the Office of Student Affairs & Admissions, he needed to provide a Discharge Summary from Methodist Hospital and a report from his psychiatrist, Dr. Davidson, that Shurb was not a danger to himself or others. For the third time, Shurb did not provide the requested information. (Doc. 7 ¶¶ 69-70.)

Defendant Caver subsequently notified UTHealth's in-house counsel that Shurb had not provided the proper documentation of his absence, that Shurb would be assigned grades of "withdrawn" for the fall 2011, that Shurb would be administratively withdrawn from the Medical School, and that a hold had been placed on his academic record. (Doc. 7 ¶¶ 71-72.) Finally, Shurb alleges that UTHealth is retaliating against him by demanding payment of a $5,000 Perkins loan that he was awarded for the 2011-2012 academic year. (*Id.* ¶¶ 75-77.)

5

Based on these alleged facts, Shurb asserts claims against UTHealth under the Rehabilitation Act, the ADA, and Chapter 321, as well as claims for breach of contract, intentional infliction of mental distress, and negligent hiring. (Doc. 7 ¶¶ 78-96, 103-121.) Shurb asserts procedural due process, substantive due process, and equal protection claims against the Individual Defendants under Section 1983, as well as a claim for intentional infliction of mental distress. (Doc. 7 ¶¶ 108-113, 121-143.)

### III.   STATEMENT OF THE ISSUES

The State Defendants move for dismissal pursuant to Rule 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. "A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum, which in this case is Plaintiff. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

As for Rule 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)). To state a valid claim for relief, a plaintiff is required to meet the pleading standard set forth in Rule 8(a)(2) of the Federal Rule of Civil Procedure, which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoting FED. R. CIV. P. 8(a) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the Court must accept the specific factual allegations in

6

the pleadings as true when deciding a motion to dismiss, *Hughes*, 278 F.3d at 420, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009).

Here, Shurb has failed to meet the minimum pleading standard as to any of his claims against the State Defendants. For the reasons set forth below, these claims should be dismissed.

## IV.    SUMMARY OF THE ARGUMENT

Shurb's claims against UTHealth for disability discrimination under Title II of the ADA and the Rehabilitation Act fail because he has not alleged that he had a qualifying disability during the relevant period. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Moreover, he has not alleged facts that plausibly suggest UTHealth engaged in disability discrimination by removing him from the Medical School. Rather, the alleged facts indicate that UTHealth removed him based on a "sound academic basis"—i.e., concerns about his mental health and fitness as a medical school student. *See Shaboon v. Duncan*, 252 F.3d 722, 731 (2001).

Shurb's claims against UTHealth for breach of contract and for alleged violations of Chapter 321 are barred by sovereign immunity. *See Tex. Nat. Resource Cons. Com'n v. IT-Davy*, 74 S.W.3d 849, 854, 860 (Tex. 2002) (holding state agency immune from breach of contract suit); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 699-702 (Tex. 2003) (holding state agencies immune from claims under Chapter 321). Similarly, Shurb's tort claims against UTHealth and the Individual Defendants in their official capacities are barred by sovereign immunity, as these claims do not fit within the limited waiver of immunity found in section 101.021 of the Texas Tort Claims Act. *See Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.–Corpus Christi 2002, no pet.) ("sovereign immunity is not waived for a claim of intentional infliction of emotional distress."); *Texas Dept. of Family and Protective Services v.*

*Atwood*, 176 S.W.3d 522, 528 (Tex. App.–Houston [1 Dist.] 2004) ("Where the allegation stems from negligent judgment or human error rather than a use or misuse of property, the pleadings fail to satisfy the limited waiver of immunity contained within the Act.); TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.057.

In addition, Shurb cannot assert § 1983 claims against UTHealth and the Individual Defendants in their official capacities, as such claims are barred by the state's sovereign immunity and the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that Eleventh Amendment bars § 1983 claims against states absent a waiver); *Kermode v. Univ. of Miss. Med. Center*, 496 Fed.Appx. 483, 488 (5th Cir. 2012) (state university and faculty sued in official capacity entitled to sovereign immunity to § 1983 claims). Moreover, neither the State nor a State official in his official capacity is a "person" who can be held liable under the statute. *See Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

As for his § 1983 claims against the Individual Defendants in their individual capacities, Shurb has failed to state a plausible claim related to procedural due process, substantive due process, or equal protection. Shurb received all of the process he was due (and more than the law requires) prior to his withdrawal from the program, in that he received at least "an informal give-and-take" between himself and UTHealth administration that gave him "the opportunity to characterize his conduct and put it in what he deems the proper context." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85-86 (1978). Nothing more is required. His substantive due process claim fails because UTHealth's concerns about the Shurb's mental health and fitness to perform as a doctor, combined with his lack of cooperation and failure to provide a certification of fitness from a treating psychiatrist, constituted "a sound academic basis for [his]

dismissal." *Shaboon v. Duncan*, 252 F.3d 722, 731 (2001). Finally, a class-of-one equal protection claim is not actionable in an academic context requiring discretionary decisionmaking. *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 599 (2008). Even if it were, Shurb has failed to plead facts showing that he was treated differently that similarly situated students and that UTHealth and the Individual Defendants lacked a rational basis for their actions. *See Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006).

Finally, Shurb's tort claims against the Individual Defendants violate the election of remedies found in Section 101.106(e) of the Texas Tort Claims Act and are subject to dismissal. *See Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); TEX. CIV. PRAC. & REM. CODE § 101.106(e).

## V. ARGUMENT AND AUTHORITY

### A. Shurb's alleged facts do not plausibly suggest that UTHealth engaged in disability discrimination in violation of Title II of the ADA or the Rehabilitation Act.

Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "no otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C. § 794(a).

"A plaintiff states a claim for relief under Title II [of the ADA] if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the

9

public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). Section 504 claims are reviewed under the standard applicable to claims arising under the ADA. *See D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing, *inter alia, Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005) (en banc)). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir.2005) (citation omitted). Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "'the sole reason' for the exclusion or denial of benefits." *Id.* (citation omitted).

Here, Shurb has failed to plausibly allege either the first of third elements of a disability discrimination claim—i.e., that he has a qualifying disability, and that he was subject to discrimination because of that disability. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity." *Garner v. Chevron Phillips Chem. Co.*, 834 F.Supp.2d 528, 537 (S.D.Tex. 2011). A "major life activity" includes functions such as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Shurb alleges that he has numerous mental health conditions, including "Obsessive Compulsive Disorder, Severe Anxiety leading to occasional panic attacks, Major Depressive

Disorder and a history of migraines." (Doc. 7 ¶ 25.) However, Shurb does not allege that any of these conditions limits a major life activity. For example, as to "learning," Shurb alleges that he "graduated from Texas A&M University with a 4.0 grade point average and graduated *summa cum laude,* Phi Beta Kappa, and with University Honors." (*Id.* ¶ 22.) He further alleges that he excelled on the MCAT exam and gained entrance to UTHealth medical school. (*Id.* ¶ 24.) It would not appear that any of Shurb's conditions substantially limits his ability to learn.[3] In short, Shurb has not alleged that any of his mental health conditions, or any other condition, substantially limited a major life activity during the relevant period,[4] and he has therefore failed to plead the first element of a disability discrimination claim.

Moreover, the facts alleged by Shurb do not plausibly suggest that UTHealth discriminated against him because of any disability, much less "solely because" of such disability. Shurb alleges that UTHealth was not only aware of his mental health issues in 2009, well before any alleged discrimination, but also that UTHealth counseled him "take advantage of the University's Alternative Pathway program that split the first year of medical school into two (2) years." (Doc. 7 ¶¶ 26-27.) Thus, the alleged facts (if assumed to be true) indicate only that UTHealth was aware of Shurb's "condition" and counseled him in a way to maximize his chances for success in medical school. Such actions do not constitute intentional discrimination on the basis of any disability.

As for his withdrawal, Plaintiff alleges it was only after learning of concerns for Shurb's mental health from his treating physicians at Methodist Hospital (including allegations of an

---

[3] Shurb does refer to being a visual learning and asking for visual aids for certain medical school classes. (Doc. 7 ¶¶ 28-29.) However, Shurb does not allege that he was substantially limited in learning *as a result of* his mental health conditions or any other disability.

[4] Shurb alleges that in 2010, he experienced migraines due to a lesion found on the temporal lobe of his brain. (*Id.* ¶ 36.) However, he does not allege that he was affected by any such health condition in connection with withdrawal from the Medical School in 2011, which is the only adverse action within the two-year limitations period under the ADA and Rehabilitation Act. *See Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011).

attempted suicide) that UTHealth required Shurb provide documentation relating to his hospitalization, as well as a certification from his psychiatrist that he was not a danger to himself or others. (Doc. 7 ¶¶ 45, 55, 62, 64-65, 69-70.) Shurb admits that he refused to provide this documentation. (*Id.* ¶ 70.) Only after Shurb's refusal to provide the requested documentation did UTHealth withdraw Shurb from his classwork. (*Id.* ¶¶ 71-72.)

As the Fifth Circuit recognized in *Shaboon v. Duncan*, 252 F.3d 722 (2001), the dismissal of a medical student due to concerns about the student's mental health and fitness to perform as a doctor, combined with the student's lack of cooperation and failure to provide a certification of fitness from a treating psychiatrist, constitutes a "a sound academic basis for [the student's] dismissal." *Id.* at 731. Shurb's allegations do not suggest any sort of intentional discrimination by UTHealth on the basis of any disability. Rather, the only plausible conclusion from Shurb's allegations is that UTHealth based its decision to withdraw Shurb from the program based on a "sound academic basis" relating to his fitness to perform as a medical student.

Shurb also fails to state a failure-to-accommodate claim. Under the implementing regulations for both Title II and the Rehabilitation Act, discrimination by a public entity includes failing to make reasonable modifications or accommodations to the disabled individual, so that he can participate in the programs provided by the public entity. *See* 28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.44(a). However, the plaintiff bears the burden of requesting reasonable accommodations. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 n.4 (5th Cir. 1999). If a plaintiff makes a valid request for reasonable accommodations, the public entity has an obligation to engage in an "interactive process" to determine the best means of accommodating the plaintiff's disability. *Id.* at 735; *see also Aragona v. Berry*, 2012 WL 467069, at *10

12

(N.D.Tex. Feb. 14, 2012) (applying burden and interactive process requirements to Title II claims).[5]

Here, Shurb never requested any accommodation in connection with any alleged disability following his hospitalization in the fall of 2011, and there is no allegation that the denial of any such accommodation led to his withdrawal from participating in the program. The only allegations in the complaint related to any accommodation refer to Dr. Cleary's alleged failure to provide Shurb copies of power point presentations for visual reinforcement in the fall of 2010. (Doc. 7 ¶¶ 29-30.) However, there is nothing to connect Dr. Cleary's alleged failure to provide the slides in 2010 to Shurb's withdrawal from the program in 2011. Moreover, any claim related to Dr. Cleary's action in 2010 would be barred by the applicable two-year statute of limitations. *See Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011).

Because Shurb has failed to allege that he had a qualifying disability during the relevant period and because he failed to allege any plausible discrimination by UTHealth as a result of any such disability, his disability discrimination claim under Title II of the ADA and the Rehabilitation Act should be dismissed for failure to state a claim.[6] Similarly, Shurb's failure-to-accommodate claim fails, as he never requested any accommodation in connection with any purported disability in the fall of 2011 prior to his withdrawal.

---

[5] Under Rehabilitation Act regulations for post-secondary educational institutions, "[a]cademic requirements that the [educational institution] can demonstrate are essential to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory …." 34 C.F.R. § 104.44(a) (Rehabilitation Act regulations). Similarly, the Title II regulations do not require modifications that "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

[6] Even if Shurb had alleged a *prima facie* claim of disability discrimination under Title II of the ADA, Shurb's claims would nevertheless be barred by the Eleventh Amendment, because UTHealth's alleged conduct did not violate the Fourteenth Amendment and Congress's purported abrogation of sovereign immunity, as applied to type of conduct alleged by Shurb, was invalid. *See United States v. Georgia*, 546 U.S. 151, 159 (2006); *Baker v. Univ. of Tex. Health Science Center Houston*, 2011 WL 1549263, at *3-*4 (S.D.Tex. Apr. 21, 2011) (Hoyt, J.).

**B.      Shurb's claims against UTHealth for breach of contract and for alleged violations of Chapter 321 of the Texas Health & Safety Code are barred by sovereign immunity.**

Although the State waives immunity *from liability* when it contracts with a private party, the State does not waive immunity *from suit* for breach of contract claims. *General Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001). Indeed, "a private citizen must have legislative consent to sue the State on a breach of contract claim." *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997). Moreover, the Texas Supreme Court has unequivocally stated that "it is the Legislature's sole province to waive or abrogate sovereign immunity." *Texas Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) (citing *Federal Sign*, 951 S.W.2d at 409).

Here, Shurb alleges that he has an express and implied contract with UTHealth based on its Policy on Appropriate Student Treatment and its Rules and Regulations, and that UTHealth breached that contract by its administrative withdrawal of Shurb from the program. (Doc. 7 ¶¶ 104-105.) However, as a state university, UTHealth is immune from suit on such claims, and this Court lacks jurisdiction to hear such claims. *See Bisong v. University of Houston*, 2006 WL 2414410 at *3 (S.D.Tex. Aug. 18, 2006) ("The court therefore finds that the University of Houston is entitled to sovereign immunity on the breach of contract cause of action, and will dismiss this cause of action against the University of Houston for lack of jurisdiction."); *Prairie View A & M Univ. v. Dickens*, 243 S.W.3d 732, 735 (Tex.App.-Houston [14th Dist.] 2007) (no jurisdiction over breach of contract claim). Similarly, Shurb's claim under Chapter 321 is barred by sovereign immunity. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 699-702 (Tex. 2003) (holding state agencies immune from Chapter 321 claims).

Shurb's breach of contract claim and Chapter 321 claim should be dismissed under Rule 12(b)(1).

**C.      Shurb's tort claims against UTHealth and the Individual Defendants in their official capacities are barred by the Texas Tort Claims Act.**

UT Health and the Individual Defendants in their official capacities are immune from suit for Plaintiff's state-law tort claims for intentional infliction of mental distress and negligent hiring. "A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity." *Forgan v. Howard Co., Tex.*, 494 F.3d 518, 520 (5th Cir. 2007) (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 586-87 (Tex. 2001)). Furthermore, it is clear under Texas law that "[p]ersons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity." *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 824 (W.D. Tex. 2007) (quoting *Nueces County v. Ferguson*, 97 S.W.3d 205, 214-215 (Tex. App.–Corpus Christi, 2002, no pet.)); *see also Alcala v. Texas Webb County*, 620 F. Supp. 2d 795, 801 (S.D. Tex. 2009) ("a suit against government employees in their official capacities is, in all respects, a suit against the State; thus employees sued in their official capacities are shielded by sovereign immunity.") (quotations omitted). Thus, the State, its governmental units, and its officials named in their official capacities are immune from suit for tort claims except to the extent sovereign immunity is expressly waived. *Burkett*, 513 F. Supp. 2d at 824.

The Texas Tort Claims Act ("TTCA") waives immunity only for three types of tort claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. TEX. CIV. PRAC. & REM. CODE § 101.021. Moreover, the Texas Legislature explicitly excluded intentional torts from any such waiver. TEX. CIV. PRAC. & REM. CODE §101.057.

15

Here, Shurb's tort claims do not arise from the operation or use of a motor vehicle, the use of real or personal property, or from premises defects. Rather, Shurb's claims arise from alleged disability discrimination and his withdrawal from classes at the Medical School in the fall of 2011. Thus, there is no waiver in the TTCA for Shurb's claims for intentional infliction of mental distress and negligent hiring asserted against UTHealth and the Individual Defendants in their official capacities. *See Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.–Corpus Christi 2002, no pet.) ("sovereign immunity is not waived for a claim of intentional infliction of emotional distress."); *Texas Dept. of Family and Protective Services v. Atwood*, 176 S.W.3d 522, 528 (Tex. App.–Houston [1 Dist.] 2004) ("Where the allegation stems from negligent judgment or human error rather than a use or misuse of property, the pleadings fail to satisfy the limited waiver of immunity contained within the Act.). Plaintiff's tort claims should be dismissed for lack of subject matter jurisdiction.

**D.      UTHealth and the Individual Defendants in their official capacities are immune from § 1983 claims and are not "persons" who can be held liable under the statute.**

The long-standing doctrine of sovereign immunity and the Eleventh Amendment deprive a federal court of jurisdiction to hear a suit against a state unless sovereign immunity is expressly waived. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-68 (1974). It is well settled that the protections afforded by sovereign immunity and the Eleventh Amendment apply to state agencies and state universities. *See Pennhurst*, 465 U.S. at 100; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."); *U.S. v. Texas Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center

with sovereign immunity as state institutions."). Similarly, the protections afforded by sovereign immunity and the Eleventh Amendment also apply to state officials named in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[the Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Pastorek v. Trail*, 248 F.3d 1140, 2001 WL 85921, at *3 (5th Cir. Jan. 26, 2001) ("the Eleventh Amendment bars appellant's [Section 1983] claims against [Louisiana State University officials] in their official capacities."); *Olivier v. Univ. of Texas Sys.*, 988 F.2d 1209, 1993 WL 81990, at *1 (5th Cir. Mar. 9, 1993) (affirming dismissal of Section 1983 claims against university officials; "Suits against the regents in their official capacity are barred by the eleventh amendment.").

In this case, Shurb asserts a § 1983 claim against UTHealth and the Individual Defendants in their official capacities. (Doc. 7 ¶¶ 121-143.) However, there is no waiver of the state's sovereign immunity found in § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that Eleventh Amendment bars § 1983 claims against states); *Stem v. Ahearn,* 908 F.2d 1, 4 (5th Cir. 1990) ("nor has state sovereign immunity been eviscerated by Congress with the passage of section 1983."). Therefore, § 1983 claims brought against states, their universities, or university officials sued in their official capacity must be dismissed for lack of subject matter jurisdiction. *See Kermode v. Univ. of Miss. Med. Center*, 496 Fed.Appx. 483, 488 (5th Cir. 2012) (state university and faculty sued in official capacity entitled to sovereign immunity to § 1983 claims); *Ridha v. Tex. A&M Univ. Sys.*, Civ. A. No. 4:08-CV-2814, 2009 WL 1406355, at *5 (S.D.Tex. May 15, 2009).

Furthermore, neither UTHealth nor the Individual Defendants in their official capacities are "persons" who can be held liable under § 1983. In order to prevail on a § 1983 claim, a

17

plaintiff must prove that (1) a *person* (2) acting under color of state law (3) subjected the plaintiffs or caused the plaintiffs to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993); 42 U.S.C. §1983. It is well settled that state agencies and state officials named in their official capacity are not "persons" for the purposes of § 1983 liability, and therefore are not a proper defendant for such claims. *See Will*, 491 U.S. at 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Scooter v. Univ. Texas San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) ("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983.").

Shurb therefore fails to state a cognizable § 1983 claim against UTHealth or the Individual Defendants in their official capacities.

### E.     Shurb fails to state a plausible constitutional violation to support his § 1983 claims.

Shurb asserts three separate § 1983 claims against the Individual Defendants in their individual capacities: procedural due process, substantive due process, and equal protection under a "class of one" theory. (Doc. 7 ¶¶ 121-143.) Shurb has failed to allege a plausible constitutional violation under any of these three theories.

### 1.     Shurb received all the process he was due in connection with his dismissal from the program.

As to his due process claim, federal courts have long assumed (without deciding) that a disciplinary or academic dismissal from a public college or university affects the student's constitutionally protected interest in continued enrollment. In the seminal case of *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78 (1978), the Supreme Court was asked to determine whether a former medical student's due process rights had been violated upon

18

her academic dismissal from the medical school of a public university. The *Horowitz* Court assumed, without deciding, that the dismissed plaintiff had a protected interest in continued enrollment and held that, even with that assumption, the student was "awarded at least as much due process as the Fourteenth Amendment requires." *Id.* at 85. The *Horowitz* Court further held that due process does *not* require any formal hearing for university students subject to academic dismissals, but rather requires only that the student receive notice of the academic problems and a "careful and deliberate" decision by the institution. *Id.* Even in the context of disciplinary dismissals, which are subject to more scrutiny, due process requires at most "'an informal give-and-take' between the student and administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the property context.'" *Id.* at 86 (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)).

Furthermore, the *Horowitz* Court made it clear that the courtroom is not the proper forum to second-guess academic decisions:

> Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement. … Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.
>
> Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. … We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship.

435 U.S. at 89-90. Numerous Fifth Circuit opinions have followed *Horowitz* in holding that dismissed students who received notice of their academic problems and some sort of give-and-

take reflecting a deliberate decision-making process by the university were afforded all the process they were due. *See, e.g., Ceasar v. Holt*, 245 Fed. Appx. 396, 397 (5th Cir. 2007); *Shaboon v. Duncan*, 252 F.3d 722, 730-32 (5th Cir. 2001) (holding dismissed medical resident received all process that was due); *Wheeler v. Miller*, 168 F.3d 241, 248-49 (5th Cir. 1999); *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (holding dismissed dental resident received all process due).

Here, Shurb alleges that he was forcibly withdrawn from the program only after the UTHealth administrators were made aware of the concerns of Shurb's treating physicians as to his mental health and stability and after Shurb repeatedly failed to provide requested documentation regarding his hospital stay and mental health status. (Doc. 7. ¶ 64-65, 69-70, 72.) For example, Shurb did not provide the requested report from his psychiatrist that he "was not a danger to himself or others." (Id. ¶ 69.) Moreover, Shurb was provided notice of the university's concerns in the form of numerous meetings with UTHealth administrators and in-house counsel. During these meetings, Shurb was not only informed of the university's concerns regarding the health and safety of Shurb and others, but he was also provided an opportunity to respond and to provide sufficient documentation to address the university's concerns. Again, Shurb refused to provide the requested documents regarding his mental health status.

Shurb claims that his procedural due process rights were violated because UTHealth "failed to allow Shurb a hearing, to be present and defend himself from the allegations against him, to confront the witnesses against him or to address any of evidence presented against him …." (Doc. 7 ¶ 124.) However, due process does not require any formal hearing for university students subject to dismissals, but rather requires only that the student receive notice of the academic problems and a "careful and deliberate" decision by the institution. *Horowitz*, 435 U.S.

at 85. Shurb received all of the process he was due prior to his withdrawal from the program, in that he received "an informal give-and-take" between himself and UTHealth administration that gave him "the opportunity to characterize his conduct and put it in what he deems the property context." *Id.* at 86.

### 2. Shurb's allegations indicate a rational basis for the Individual Defendants' actions, which defeats his substantive due process claim.

To establish a violation of the Fourteenth Amendment's guarantee of substantive due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) in an arbitrary and capricious manner. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). In deciding whether a government action is arbitrary, courts look to whether the government action is "is rationally related to a legitimate governmental interest." *Simi Inv. Co., Inc. v. Harris County, Tex.*, 236 F.3d 240, 250-51 (5th Cir. 2000). "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

Taking all of Shurb's allegations as true, the actions of the Individual Defendants in withdrawing Shrub from the program were rationally related to a legitimate governmental interest and cannot form the basis of a substantive due process violation. According to Shurb's allegations, the Individual Defendants were informed of concerns about Shurb's mental health by his treating physicians at Methodist and then took actions to ensure that Shurb was not a danger to himself or others. As the Fifth Circuit recognized in *Shaboon v. Duncan*, 252 F.3d 722 (2001), the dismissal of a medical student due to concerns about the student's mental health and fitness to perform as a doctor, combined with the student's lack of cooperation and failure to provide a

certification of fitness from a treating psychiatrist, constitutes a "a sound academic basis for [the student's] dismissal." *Id.* at 731.

Because the only plausible conclusion from Shurb's allegations is that the Individual Defendant's actions were rationally related to a legitimate governmental interest, his substantive due process claim fails as a matter of law.

### 3. Shurb fails to allege a plausible class-of-one equal protection claim.

To state a claim under the Equal Protection clause of the Fourteenth Amendment, a plaintiff must allege "membership in a protected class that has been singled out for unequal treatment by the government." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985). In this case, Shurb alleges that he is a member of a "class of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To maintain an equal protection claim as a class of one, a plaintiff must allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. The Supreme Court has distinguish between a "class of one" claim where the government is exercising "the power to regulate or license, as lawmaker," versus where the government is acting "as proprietor, to manage [its] internal operation." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 599 (2008).

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

22

*Engquist*, 553 U.S. at 603. The *Engquist* Court went on to hold that "class-of-one theory of equal protection has no application in the public employment context." *Id.* at 607.

Numerous courts have applied the Supreme Court's reasoning in *Engquist* to preclude class-of-one claims in public university and academic contexts requiring discretionary decisions by state actors. *See, e.g., Heike v. Guevara*, No. 10–1728, 2013 WL 1092737, at \*\*10 (6th Cir. Mar. 18, 2013) (dismissing claim by student athlete dismissed from team); *Nofsinger v. Virginia Comm. Univ.*, No. 3:12–CV–236, 2012 WL 2878608, at \*11 (E.D.Va. July 13, 2012) (holding "the public education context an equally poor fit for class-of-one equal protection claims due to the inherently discretionary decisionmaking that occurs there" and dismissing claim by graduate student); *Yan v. Penn State Univ.*, No. 4:10–CV–00212, 2010 WL 3221828, at \*7 (M.D.Pa. Aug. 13, 2010) ("the class-of-one claim brought by Yan against defendants for expelling her from the Ph. D. program is not actionable."); *Bissessur v. Ind. Univ. Bd. of Trustees*, No. 1:07-CV-1290, 2008 WL 4274451, at \*9 (S.D. Ind. Sept. 10, 2008) (holding that "Supreme Court's rationale in *Engquist* effectively forecloses [plaintiff's] claim" relating to dismissal from optometry school), *aff'd* 581 F.3d 599 (7th Cir. 2009).

The same should hold true here as to the decisions made by UTHealth and the Individual Defendants related to Shurb's academic progress and fitness to continue in the program, which "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist*, 553 U.S. at 603; *see also Horowitz*, 435 U.S. at 89-90 ("the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making"). Like the numerous courts cited above, this Court should decline to recognize a class-of-one claim in the academic context.

23

Even if Shurb could bring a class-of-one claim in the academic context, Shurb has failed to do so. To assert such a claim, Shurb must allege that (1) he was "intentionally treated differently from others similarly situated" and (2) "that there [was] no rational basis for the difference in treatment." *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). As the Fifth Circuit has explained, any rational ground for the conduct in question will suffice to defeat a class-of-one claim. *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007).

Here, Shurb has failed to allege that he was treated differently from other similarly situated students who had also been hospitalized and whose treating physicians had expressed concerns regarding their mental health and safety. *See Fan v. Brewer*, 2009 WL 1743824 at *8 (S.D.Tex. June 17, 2009) (dismissing class-of-one claim by dismissed graduate student who failed to allege she was treated differently that other similarly situated students); *Retzlaff v. de la Vina*, 606 F.Supp.2d 654, 658 (W.D.Tex. 2009) (dismissing class-of-one claim where plaintiff failed to show he was treated differently than similarly-situated individuals). Moreover, it is clear from the allegations in the complaint that UTHealth and the Individual Defendants had a rational basis for their actions—that is they were concerned about Shurb's mental health, whether he was a danger to himself and others, and whether he was otherwise fit to continue as a medical school student. *See Shaboon*, 252 F.3d at 731 (holding concerns of medical student's mental health and fitness to practice constituted rational basis for dismissal). As such, Shurb has failed to plead a plausible class-of-one equal protection claim.

### F. Shurb's tort claims against the Individual Defendants in their individual capacities are barred by Section 101.106(e) of the Texas Tort Claims Act.

Shurb asserts a common-law tort claim of intentional infliction of mental distress against the Individual Defendants. (Doc. 7 ¶¶ 108-113.) However, the TTCA includes a strict "Election

of Remedies" section that requires "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 101.106. This provision "narrows the issues for trial and reduces delay and duplicative litigation costs." *Garcia*, 253 S.W.3d at 657.

In particular, Section 101.106(e) applies in suits against both a governmental unit and its employees (such as this one), and it states: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Furthermore, under section 101.106, suit "a suit filed under this chapter" includes any suit alleging any tort claims against both the governmental unit and its employees, regardless of whether the TTCA waives the governmental unit's immunity for such claims. *See Garcia*, 253 S.W.3d at 659 ("all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106.").

In this suit, Shurb asserts the tort claim of intentional infliction of mental distress against both UTHealth and the Individual Defendants. (Doc. 7 ¶¶ 108-113.) This violates the election of remedies set forth in Section 101.106(e), and the tort claims against the Individual Defendants in their individual capacities should therefore be dismissed.

## VI.    CONCLUSION

The State Defendants respectfully request that this Court grant this Motion to Dismiss and dismiss the claims asserted against them in Plaintiff's Amended Complaint.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense
Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division


/s/ Darren G. Gibson _____
**DARREN G. GIBSON**
**Attorney-in-charge**
Texas Bar No. 24068846
Southern District ID No. 1041236
Darren.Gibson@oag.state.tx.us
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

***ATTORNEYS FOR THE STATE***
***DEFENDANTS***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Jason J. Bach
The Bach Law Group PLLC
Flintrock Trace, Suite 255
Austin, Texas 78738
512-879-3901
jbach@bachlawfirm.com
*Attorney for Plaintiff*

Dwight W. Scott, Jr.
Scott Patton PC
3939 Washington Avenue, Suite 203
Houston, Texas 77007
Telephone: (281) 377-3266
dscott@scottpattonlaw.com
*Attorney for Defendant The*
*Methodist Hospital*


/s/ Darren G. Gibson_____
**DARREN G. GIBSON**
Assistant Attorney General

27