IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JASON SHURB, § | |
|    Plaintiff, § | |
| § | Civil Action No. 4:13-cv-00271 |
| v. § | |
| § | |
| THE UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER AT HOUSTON– § | |
| SCHOOL OF MEDICINE, *et al.*, § | |
|    Defendants. § | |

**STATE DEFENDANTS' MOTION TO DISMISS
REPLY BRIEF**

TO THE HONORABLE KENNETH M. HOYT:

Defendants The University of Texas Health Science Center at Houston ("UTHealth"), Dr. Guiseppe N. Colasurdo, Dr. Margaret C. McNeese, and Patricia E. Caver (collectively, the "State Defendants") file this reply brief in further support of their Motion to Dismiss Plaintiff's Amended Complaint (Doc. 19).

**I.    ARGUMENT AND AUTHORITY**

**A.    Shurb's alleged facts do not plausibly suggest that UTHealth engaged in disability discrimination in violation of Title II of the ADA or the Rehabilitation Act.**

Shurb has failed to plausibly allege either the first of third elements of a disability discrimination claim—i.e., that he has a qualifying disability, and that he was subject to discrimination because of that disability. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Nothing in his opposition brief suggests otherwise.

1

Shurb first argues that he has alleged that his conditions of "obsessive compulsive disorder, severe anxiety leading to occasional panic attacks, major depressive disorder, and a history of migraines" constitute qualifying disabilities under the ADA. (Doc. 25 at 14; Doc. 7 ¶ 25.) However, "[s]imply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity." *Garner v. Chevron Phillips Chem. Co.*, 834 F.Supp.2d 528, 537 (S.D.Tex. 2011). Shurb has not identified any specific major life activity that he alleges is substantially limited by these conditions, nor does his complaint allege that his conditions substantially limit his ability to learn. Rather, Shurb alleges that "he is a visual learner and benefits from visual aids and resources for retaining information and studying for exams." (Doc. 7 ¶ 28.) Merely being a visual learner and benefiting from visual aids does not suggest that Shurb's ability to learn is substantially limited by any of his conditions. Shurb certainly does not allege that he has been diagnosed with any learning disability related to his conditions, which would be surprising given his prior academic achievement and success. (Doc. 7 ¶¶ 22, 24.)  Shurb simply argues that because UTHealth was aware of such conditions and recommended he participate in the University's Alternative Pathway program, these conditions somehow constitute qualifying disabilities under the statute. Yet Shurb has offered no authority for this novel proposition.

Shurb also argues that he has stated a failure-to-accommodate claim based on conduct that occurred in the fall of 2010 related to Dr. Cleary's Gross Anatomy class. (Doc. 25 at 15.) However, any claim related to Dr. Cleary's actions in 2010 is barred by the applicable two-year statute of limitations, as Shurb did not file his lawsuit until February 2013, well more than two years after the events related to that class. *See Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Finally, Shurb's opposition brief does not dispute that his complaint fails to allege a

2

disability discrimination claim based on his removal from the program in 2011. There are simply no facts suggesting that his removal was because of any alleged disability.

### B. Shurb's claims against UTHealth for breach of contract and for alleged violations of Chapter 321 of the Texas Health & Safety Code are barred by sovereign immunity.

Shurb's opposition brief does not dispute that his breach of contract and Chapter 321 claims against UTHealth are barred by sovereign immunity state law.[1] Shurb's breach of contract and Chapter 321 claims against UTHealth should be dismissed.

### C. Shurb's tort claims against UTHealth and the Individual Defendants in their official capacities are barred by the Texas Tort Claims Act.

Similarly, Shurb's opposition brief does not dispute that tort claims against UTHealth and the Individual Defendants in their official capacities are barred by the Texas Tort Claims Act. Shurb's tort claims against UTHealth and the Individual Defendants in their official capacities should be dismissed. His arguments regarding the tort claims against the Individual Defendants in their individual capacities is discussed below.

### D. UTHealth and the Individual Defendants in their official capacities are immune from § 1983 claims and are not "persons" who can be held liable under the statute.

Shurb does not dispute that his claims for monetary relief pursuant to § 1983 against UTHealth and the Individual Defendants in their official capacities are barred due to the Eleventh Amendment and because states are not "persons" for purposes of § 1983. (Doc. 25 at 15-16.) Rather, Shurb argues that he can assert § 1983 claims for damages against the Individual Defendants in their individual capacities, which is correct. Those claims are subject to dismissal for separate reasons, as explained below.

---

[1] Shurb does argue that he can bring claims for injunctive relief based on alleged violations of his *federal* constitutional and statutory rights pursuant to 42 U.S.C. § 1983 and the *Ex parte Young* doctrine. (Doc. 25 at 16.) Those claims are addressed separately below.

3

In addition, Shurb asserts that he can assert § 1983 claims against all the defendants for injunctive relief pursuant to the *Ex parte Young* doctrine. While Shurb is partially correct, he has not alleged such a claim here.

The Supreme Court has recognized a limited exception to Eleventh Amendment immunity known as the *Ex parte Young* doctrine, which allows a plaintiff to seek prospective injunctive relief (but not monetary damages) against state officials sued in their official capacity to prevent enforcement of an unconstitutional state enactment or law. *See Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441 (1908); *see also Papasan v. Allain*, 478 U.S. 265, 276-77 (1986) (explaining *Ex parte Young* doctrine). Under this limited exception, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *American Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir.1993) (quoting *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n.10 (1989)).

However, *Ex parte Young* has no application here, as Shurb is neither challenging the enforcement of any state enactment or law, nor is he seeking prospective injunctive relief. Rather, he is challenging past discretionary decisions by UTHealth, namely his withdrawal from the program in the fall of 2011, which does not constitute a continuing violation of law. Moreover, Shurb's purported relief of an injunction requiring Defendants "to cease all unlawful and unconstitutional acts that they currently engage in" is too vague to constitute a claim for prospective injunctive relief. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423 (1985) ("We have refused to extend the reasoning of *Young*, however, to claims for retrospective relief."); *White v. Livingston*, Civ. A. No. H-08-2413, 2009 WL 2900771, at *6 (S.D. Tex. Sept. 3, 2009) ("When a plaintiff alleges only a single, past statutory violation and does not assert any

likelihood that he will be subjected to a similar violation in the future, he does not have standing to seek the prospective relief allowed under *Ex parte Young*.") (quotations omitted).

Even if Shurb could bring a claim for prospective injunctive relief against the Individual Defendants in their official capacities under *Ex parte Young*, he has failed to allege any violation of his constitutional rights for the reasons set forth below. Shurb therefore fails to state a cognizable § 1983 claim against UTHealth or the Individual Defendants in their official capacities.

### E. Shurb fails to state a plausible constitutional violation to support his § 1983 claims.

Shurb asserts three separate § 1983 claims against the Individual Defendants: procedural due process, substantive due process, and equal protection under a "class of one" theory. (Doc. 7 ¶¶ 121-143.) Shurb has failed to allege a plausible constitutional violation under any of these three theories.

#### 1. Shurb received all the process he was due in connection with his dismissal from the program.

In his opposition, Shurb argues that his withdrawal from UTHealth was disciplinary, and not academic, and that he therefore was due a heightened level of process, including a full hearing. (Doc. 25 at 17-18; Doc. 1 ¶ 124.) However, the Fifth Circuit has made it clear that when a medical student is dismissed or withdrawn from a program due to concerns regarding the student's mental health and fitness to continue in the program, including the student's failure to provide requested information regarding their mental state, such decisions are academic in nature, not disciplinary. *See Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001). The court's holding in *Shaboon* is directly on point.

> Here, the undisputed facts indicate that the Health Science Center dismissed Shaboon for reasons related to her fitness to perform as a doctor. … No psychiatrist ever cleared Shaboon to return to

5

> work, and Shaboon missed clinical rotations as a result. Although Shaboon's intransigence might suggest that her dismissal was disciplinary, her refusal to acknowledge and deal with her problems *furnished a sound academic basis* for her dismissal. As a matter of law, therefore, Shaboon was not entitled to any type of hearing and cannot claim that Dr. Duncan violated a liberty interest in her residency.

*Id.* at 731 (emphasis added). The same is true here, as Shurb's refusal to address UTHealth's concerns by providing the requested information regarding his mental health and fitness to continue in the program "furnished a sound academic basis" for his withdrawal from the program.

Moreover, even if Shurb's withdrawal had been disciplinary in nature, he still received all the process he was due. "[W]hen a student is dismissed for disciplinary reasons, he is not entitled to a formal hearing but only to an 'informal give-and-take' with the school to have an 'opportunity to characterize his conduct[.]'" *Senu-Oke v. Jackson State University*, 283 Fed.Appx. 236, 240 (5th Cir. 2008) (quoting *Horowitz*, 435 U.S. at 86). The Fifth Circuit has repeatedly held that such an "informal give-and-take" like the one Shurb received is sufficient to meet the minimum due process standard in the disciplinary context. *See Senu-Oke*, 283 Fed.Appx. at 240; *Parker v. Duffey*, 251 Fed.Appx. 879, 883 (5th Cir. 2007) (holding that meetings with faculty and administrators regarding allegations prior to suspensions sufficient to meet either standard); *Wheeler v. Miller*, 168 F.3d 241, 248-49 (5th Cir. 1999) (holding informal give-and-take with administration regarding reasons for dismissal sufficient to meet standard). Again, *Shaboon* is directly on point.

> Shaboon was informed that her residency was in jeopardy and of her deficient performance. She had several opportunities to comply with the official requests for a review of her psychiatric records and to explain why she should not be dismissed. She was allowed to have her attorney represent her in a meeting with Duncan and Park. Thus, Shaboon received sufficient process as a matter of law even if her dismissal was disciplinary.

6

*Shaboon*, 252 F.3d at 731.

The same holds true here. Shurb repeatedly met with UTHealth administrators and attorneys who offered him several attempts to comply with their requests and provided him a chance to explain his position as to why he should not be withdrawn from the program. (Doc. 7. ¶ 64-65, 69-70, 72.) Thus, Shurb received the informal give-and-take required for disciplinary actions.

Because Shurb received all the process he was due, the Court should dismiss his procedural due process claim against the Individual Defendants, whether asserted in their individual capacities for monetary damages or in their official capacities for injunctive relief.

### 2. Shurb's allegations indicate a rational basis for the Individual Defendants' actions, which defeats his substantive due process claim.

In his opposition, Shurb argues that UTHealth's decision to withdraw him from the program was arbitrary and capricious and "fundamentally unfair" because it was in violation of the school's rules and regulations. (Doc. 25 at 19-20.)

As an initial matter, the Supreme Court has held that dismissed students cannot assert a substantive due claim where the decision was based on the faculty's professional judgment.

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (holding that dismissal decision in medical program "made conscientiously with clear deliberation" did not result in substantive due process violation). Moreover, the Fifth Circuit has made it clear that dismissal of a medical school student due to concerns about the student's mental health and fitness to perform in the program, combined with the student's lack of cooperation and failure to provide a certification of

7

fitness from a treating psychiatrist, constitutes a "a sound academic basis for [the student's] dismissal." *Shaboon*, 252 F.3d at 731.

As for the alleged violations of UTHealth's own policies, the Fifth Circuit has expressly rejected the notion that a violation of a university's procedures, by itself, can constitute a substantive due process violation. "There is not a violation of due process every time a university or other government entity violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Levitt* v. *University of Texas at El Paso*, 759 F.2d 1224, 1230 (1985).

In short, the Individual Defendants' actions were rationally related to a legitimate state interest, were not arbitrary and capricious as a matter of law, and cannot form the basis of an alleged substantive due process violation.

### 3. Shurb fails to allege a plausible "class of one" equal protection claim.

As for Shurb's "class of one" equal protection claim, Shurb has offered no authority for extending such a claim to discretionary decisions in the academic context in light of the limitations placed on "class of one" claims by the Supreme Court in *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008). Indeed, Plaintiff has not cited to a single case recognizing a "class of one" claim in the academic context since *Engquist* was decided. Nor has Plaintiff offered any reason why this Court should deviate from the holdings of numerous other courts that *Engquist* bars such claims. (Doc. 19 at 23, citing cases.)

Furthermore, Shurb has failed to offer any reason why this Court should abandon well-settled Fifth Circuit law that dismissal of a medical school student due to concerns about the student's mental health and fitness to perform in the program, combined with the student's lack of cooperation and failure to provide documentation regarding their mental health and fitness,

8

constitutes a "a sound academic basis for [the student's] dismissal." *Shaboon*, 252 F.3d at 731. The law is clear that the Individual Defendants had a rational basis for their actions, which defeats a "class of one" claim, to the extent such a claim could be asserted in here.

### F. Shurb's tort claims against the Individual Defendants in their individual capacities are barred by Section 101.106(e) of the Texas Tort Claims Act.

Finally, in arguing that his tort claims against the Individual Defendants in their individual capacities are not barred by Section 101.106(e) of the TTCA, Shurb relies on a single case—*Williams v. Nealon*, 199 S.W.3d 462, 467 (Tex. App. 2006). However, Plaintiff failed to inform the Court that this holding by the Texas Court of Appeals has been reversed by the Texas Supreme Court. *Williams v. Nealon*, 332 S.W.3d 364 (Tex. 2011). As the Texas Supreme Court made clear, "for purposes of section 101.106(f), a tort action is brought 'under' the Texas Tort Claims Act, even if the government has not waived its immunity for such actions." *Id.* at 365.

Because Plaintiff's tort claims against the Individual Defendants in their individual capacities are barred by the TTCA, those claims should be dismissed.

## II. CONCLUSION

For the reasons stated above and as stated in the opening brief, the State Defendants respectfully request that this Court grant this Motion to Dismiss and dismiss the claims asserted against them in Plaintiff's Amended Complaint.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Division Chief - General Litigation


　/s/　Darren G. Gibson
**DARREN G. GIBSON**
**Attorney-in-charge**
Texas Bar No. 24068846
Southern District ID No. 1041236
Darren.Gibson@texasattorneygeneral.gov
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

*ATTORNEYS FOR THE STATE DEFENDANTS*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Jason J. Bach | Dwight W. Scott, Jr. |
| The Bach Law Group PLLC | Scott Patton PC |
| Flintrock Trace, Suite 255 | 3939 Washington Avenue, Suite 203 |
| Austin, Texas 78738 | Houston, Texas 77007 |
| 512-879-3901 | Telephone: (281) 377-3266 |
| jbach@bachlawfirm.com | dscott@scottpattonlaw.com |
| *Attorney for Plaintiff* | *Attorney for Defendant The Methodist Hospital* |

  /s/   Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General