UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JASON SHURB, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-271 |
| § | |
| THE UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER AT HOUSTON-SCHOOL § | |
| OF MEDICINE, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1), (6), by the defendants, the University of Texas Health Science Center at Houston (the "University"), Dr. Guiseppe N. Colasurdo, Dr. Margaret C. McNeese, and Patricia E. Caver (the "defendants") (Docket No. 19).  The plaintiff, Jason Shurb, has filed a response (Docket No. 25), to which the defendants have replied (Docket No. 26).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS the motion to dismiss in part and DENIES it in part.[1]

### II.   FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff started medical school at the University in the fall of 2009.  He claims that he experienced obsessive compulsive disorder, severe anxiety leading to occasional panic attacks, major depressive disorder, and a history of migraines.  He alleges that, due to those medical problems, and upon the advice of University administrators, he participated in the

---

[1] As the defendants note, their motion does not address the claims against Methodist Hospital.  Therefore, this decision does not address those claims.

University's Alternative Pathway program, which splits the first year of medical school into two years.

The plaintiff claims that he is also a visual learner and benefits from visual aids and resources for retaining information and studying for examinations. He alleges that his professors provided him access to visual aids, resources, and presentations, except for professor Leonard J. Cleary. He contends that in the fall of 2010, he sent several emails to Dr. Cleary, requesting access to power point presentations from the class to provide the visual reinforcement he needed, but Dr. Cleary refused. The plaintiff claims that Dr. Cleary continued to refuse his request even after he explained that he was a visual learner and had received visual accommodations from other professors.

The plaintiff asserts that in October of 2010, he contacted Dr. Guiseppe N. Colasurdo, Dean of the University's medical school, for assistance in obtaining the visual aids, but Dr. Colasurdo did not respond to his emails.[2] Although Dr. Colasurdo subsequently directed the plaintiff to the Office of Student Affairs, he claims that the doctor failed to address his accommodation requests.

The plaintiff alleges that the lack of accommodation caused his anxiety to worsen and he started experiencing blinding migraines. Therefore, he took a medical leave of absence for the fall 2010, upon the advice of Dr. Sheela L. Lahoti, Assistant Dean for Admissions and Student Affairs.

The plaintiff claims that the University required him to follow up with his psychiatrist, Dr. Joyce Davidson, and to provide a letter from the doctor that he was fit to resume classes. He

---

[2]Dr. Colasurdo is the president of the University and the Dean of the Medical School. It appears that the plaintiff's claims against Dr. Colasurdo only relate to his role as Dean.

alleges that Dr. Davidson subsequently provided a letter clearing him to resume classes the following fall.

According to the plaintiff, after resuming classes in the fall of 2011, he became "severely ill, convulsing, unable to walk without assistance, and unable to drink even water without vomiting." After visiting a 24-hour Urgent Care Center, the plaintiff was admitted to Methodist Hospital. He claims that, while at the hospital, he was required to speak with a psychiatrist other than his own and the treating physician, Dr. Lindsay Waters, falsely accused him of attempting suicide by drinking antifreeze. The plaintiff also asserts that rumors "began to spread to other residents, students, and apparently all the way back to the University, that [he] allegedly inflicted his condition upon himself." The plaintiff "believes" that Dr. Waters improperly communicated with the University regarding his confidential educational, medical, and mental health records.

The plaintiff alleges that his mother contacted Patricia E. Caver, the Director of Admissions and Student Affairs, and informed her that he would be in the hospital for an unknown period of time. He claims that the University wished him well and voiced no concerns regarding his absence.

After being released from the hospital, the plaintiff contacted Dr. Lahoti at the University about returning to classes. Dr. Lahoti requested a medical release form and a note from the plaintiff's treating physician. The plaintiff asserts that he provided some documentation about his hospitalization to the University and, believing that he had clearance to do so, he attended classes from September 21 to October 7, 2011.

The plaintiff asserts that on October 7, 2011, he was "abruptly and involuntarily" escorted out of class by a representative from the Office of Student Affairs, where Margaret C. McNeese, Associate Dean for Admissions and Student Affairs, Dr. Lahoti, and Caver were

waiting for him. He claims that the administrators imposed the following additional conditions before he could resume classes: disclosure of his full medical record from the hospital and the 24-hour Urgent Care Center; attending follow-up appointments with his psychiatrist and other doctors; and signing several authorization forms for the use and disclosure of protected health information. The plaintiff alleges that Dr. McNeese told him the measures were required to protect the faculty and students from him. He "believes" that Dr. Lahoti changed her mind about his clearance to resume classes because of, *inter alia*, an "unauthorized contact from the Hospital stating something untrue or misleading."

On October 10, 2011, the plaintiff and his mother met with Dr. McNeese, Dr. Lahoti, and Caver. The plaintiff claims that once his mother, who thought it was "wise" to record the meeting, took out a tape recorder, the administrators refused to continue the meeting without legal representation, who was unavailable at the time. The plaintiff claims that he and his mother then met with Dr. Colasurdo who informed them that he left "such situations to the Student Affairs Office" and instructed his assistant to arrange a meeting with the University's legal counsel.

On October 11, 2011, the plaintiff and his mother met with David Jenkins from the University's Office of Legal Affairs, but he alleges that no one from the Office of Student Affairs was present. The plaintiff claims that when Jenkins was informed of the "full medical record disclosure" condition that was placed upon him, Jenkins "seemed surprised" and said there must have been some misunderstanding. Jenkins then instructed the plaintiff to obtain a Discharge Summary from the hospital and a report from his psychiatrist that he was not a danger to himself or others before he was allowed to resume classes. The plaintiff admits that he did not

provide the requested information, but claims that he believed it was a violation of his rights and was unreasonable and "grossly overbroad."

On December 22, 2011, Caver, believing that the plaintiff had not complied with the University's requests, sent a letter to Jenkins that the plaintiff would be assigned grades of "withdraw" for the fall 2011 semester and that he would be withdrawn from the University. The plaintiff further alleges that the University retaliated against him by demanding payment of a $5,000 Perkins loan he was awarded for the 2011-2012 academic year.

Based on those allegations, the plaintiff asserts claims against the University under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), Chapter 321 of the Texas Health and Safety Code, breach of contract, intentional infliction of emotional distress, and negligent hiring. He also raises claims against the individual defendants for intentional infliction of emotional distress and violations of procedural and substantive due process, and equal protection.

### III.    CONTENTIONS OF THE PARTIES

#### A.    The Defendants' Contentions

The defendants argue that the following claims are barred by sovereign immunity: the claims against the University for breach of contract and violations of Chapter 321; and the tort and §1983 claims against the University and the individual defendants in their official capacity. They also contend that the plaintiff has failed to allege plausible claims under the ADA and Rehabilitation Act.

The defendants also argue for dismissal of the claims against the individual defendants in their individual capacities because the plaintiff has failed to state a plausible claim for procedural due process, substantive due process, and equal protection violations.

### B.     The Plaintiff's Contentions

The plaintiff argues that his ADA and Rehabilitation Act claims should not be dismissed because he has properly pled a disqualifying disability, including obsessive compulsive disorder and severe anxiety.  He also contends that he has pled sufficient facts to allege a violation of his substantive and procedural due process, and equal protection rights.

The plaintiff further claims that sovereign immunity does not bar injunctive relief against the University and its officials for ongoing violations of his constitutional and statutory rights.

## IV.     STANDARD OF REVIEW

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction.  "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3).  Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).  Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc.*, *Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th

Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations"). In making its ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

B.   **Rule 12(b)(6)**

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly*, 550 U.S. at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

V.    ANALYSIS AND DISCUSSION

The defendants' motion to dismiss should be granted in part and denied in part.

A.    **The Following Claims Are Barred By Sovereign Immunity.**

Sovereign immunity, pursuant to the Eleventh Amendment to the federal Constitution, is the "privilege of the sovereign not to be sued without its consent." *Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011). Therefore, suits against the state are barred unless the state "consents to suit or [if] Congress has clearly and validly abrogated the state's sovereign immunity." *Kermode v. Univ. of Mississippi Med. Ctr.*, 496 F. App'x 483, 487 (5th Cir. 2012).

Sovereign immunity also bars suits against state officials in their official capacity. *See Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012); *Kermode*, 496 F. App'x at 488. Moreover, "it is undisputed that" state universities, including the University in this case, as "arm[s] of the state," are entitled to sovereign immunity. *Sullivan v. Univ. of Texas Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007).

### 1. The claims against the University for breach of contract and violation of Chapter 321 of the Texas Health & Safety Code are barred by sovereign immunity.

The plaintiff claims that he has an express and implied contract with the University pursuant to its Policy on Appropriate Student Treatment and its Rules and Regulations and the University breached that contract by, *inter alia*, denying him reasonable accommodation and forcing him to withdraw from the University. However, even assuming, without deciding, that the plaintiff had a valid contract with the University, his claim must be dismissed because the University, as an arm of the state, is immune from breach of contract claims. *See Bisong v. Univ. of Houston*, CIV.A.H-06-1815, 2006 WL 2414410, at *2-3 (S.D. Tex. Aug. 18, 2006) (breach of contract claim, based on alleged violations of the University's Handbook, was barred by sovereign immunity); *Muthukumar Nachiappan Subbiah v. The Univ. of Texas at Dallas*, 3:10-CV-115-B, 2011 WL 1771806, at *7 (N.D. Tex. May 10, 2011) (there "is a litany of cases . . . that have found neither a state waiver nor a Congressional abrogation of the State of Texas' sovereign immunity with respect to a breach of contract claim"), *aff'd*, 471 F. App'x 407 (5th Cir. 2012); *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 597 (Tex. 2001) ("there is but one route to the courthouse for breach-of-contract claims against the State [of Texas], and that route is through the Legislature").

Similarly, the plaintiff's claim that the University violated Chapter 321 of the Texas Health and Safety Code by, *inter alia*, not keeping his health care information confidential is barred by sovereign immunity. *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 737 (5th Cir. 2010) (the State of Texas is immune from Chapter 321 claims); *see also Beaumont State Ctr. v. Kozlowski ex rel. Allen*, 108 S.W.3d 899, 900 (Tex. 2003).

### 2. The tort and Section 1983 claims against the University and the individual defendants in their official capacities are barred.

The Court is of the opinion that the plaintiff's claim for intentional infliction of emotional distress against the University and the individual defendants in their official capacities should be dismissed because the State of Texas and its officials are immune from tort liability unless sovereign immunity is waived, which is not the case here. *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (intentional infliction of emotional distress claim was barred by sovereign immunity because it was not one of the claims waived by the Texas Tort Claims Act); *Alcala v. Texas Webb Cnty.*, 620 F. Supp. 2d 795, 802 (S.D. Tex. 2009) (dismissing intentional infliction of emotional distress claim).

Similarly, the claim for negligent hiring, training, and supervision is barred by sovereign immunity. *See Rivera v. City of San Antonio*, SA-06-CA-235-XR, 2006 WL 3340908, at *15 (W.D. Tex. Nov. 15, 2006) ("negligent hiring and negligent training are areas of liability that have not been waived by" the Texas Tort Claims Act); *Kesler v. King*, 29 F. Supp. 2d 356, 377 (S.D. Tex. 1998) (negligent hiring claim barred by sovereign immunity); *see also The Univ. of Texas Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

Moreover, the § 1983 claims against the University and individual defendants in their official capacities are dismissed pursuant to the Eleventh Amendment.³ *See Alegria v. Williams*, 314 F. App'x 687, 689 (5th Cir. 2009) (section 1983 claims against the State and its officials in their official capacity are barred by sovereign immunity); *Jones v. Alfred*, 353 F. App'x 949, 951 (5th Cir. 2009) ("Section 1983 does not provide a cause of action against states or state employees in their official capacities for damages") (citations omitted).⁴

### 3. The tort claims against the individual defendants in their individual capacities are barred by the Texas Tort Claims Act.

Section 101.106(e) requires a "plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE §101.106. Therefore, if a "suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE §101.106(e). Accordingly, in this case, because the plaintiff asserts a tort claim of intentional infliction of emotional distress against both the University (as a governmental unit) and the individual defendants, he is in violation of Section 101.106(e) and his claims against the individual defendants in their individual capacities must be dismissed. *See Garcia*, 253 S.W.3d at 654, 659; *Landreneau v. Gorczynski*, CIV.A.H-07-2144, 2009 WL

---

³42 U.S.C § 1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

⁴The plaintiff asserts that he can bring: (1) Section 1983 claims for damages against the individual defendants in their individual capacities; and (2) claims for injunctive relief against the University and the individual defendants. Those claims and arguments will be addressed in Section B, below.

151580, at*2 (S.D. Tex. Jan. 22, 2009); *Alcala v. Texas Webb Cnty.*, 620 F. Supp. 2d 795, 805 (S.D. Tex. 2009).

The plaintiff seems to argue that since his intentional infliction of emotional distress claim could not have been brought against the governmental unit (the University) under the Tort Claims Act, Section 101.106(e) does not apply and he may sue the individual defendants in their individual capacities. The plaintiff's argument, however, has been rejected by the Texas Supreme Court, other Texas courts, and federal courts in this Circuit. *See Nealon v. Williams*, 332 S.W.3d 364 (Tex. 2011);[5] *Garcia*, 253 S.W.3d at 654, 659; *Singleton v. Casteel*, 267 S.W.3d 547 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Landreneau*, 2009 WL 151580, at *2; *Alcala*, 620 F. Supp. 2d at 805.

### B. The Following Claims May Proceed.

The Court denies the defendants' motion to dismiss with respect to the following claims.

#### 1. The ADA and Rehabilitation Act claims.

A plaintiff states a claim for relief under Title II of the ADA if he alleges that: (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is because of his disability. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citations omitted). The "rights and remedies afforded . . . under title II of the ADA are almost entirely duplicative of those provided under §504 of the Rehabilitation Act."[6]

---

[5]As the defendants correctly note, *Nealon v. Williams*, 199 S.W.3d 462 (Tex.App. 2006), the only case relied upon by the plaintiff to support his argument, was overturned by the Texas Supreme Court more than two years ago. *See Nealon v. Williams*, 332 S.W.3d 364 (Tex. 2011).

[6]Title II of the ADA provides that, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall,

*Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Therefore, claims under both statutes are reviewed under the same standard. *See D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Bennett-Nelson*, 431 F.3d at 454.[7]

The defendants argue that the plaintiff has failed to plausibly allege either the first or third element of a disability claim, *i.e.*, that he has a disqualifying disability and that he was subject to discrimination because of that disability. The defendants' argument is unpersuasive.

In his complaint, the plaintiff alleges that he experienced obsessive compulsive disorder, severe anxiety leading to occasional panic attacks, major depressive disorder, and a history of migraines. He also alleges that the University acknowledged his disability by advising him to participate in Alternative Pathway program, which splits the first year of medical school into two years, and that his professors provided him access to visual aids and resources, except for professor Cleary. The plaintiff further claims that his repeated requests for accommodation were rejected by the University. Therefore, the Court is of the opinion that the facts, when viewed in the light most favorable to the plaintiff, are sufficient to state claims under the Rehabilitation Act and the ADA.[8]

---

solely by reason of his or her disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . . " 29 U.S.C. §794(a).

[7] The only material difference between §504 and Title II of the ADA lies in their respective causation requirements. Section 504 prohibits discrimination "solely by reason of" a person's disability, whereas under Title II of the ADA, "discrimination need not be the sole reason" for denial of benefits. *Bennett-Nelson*, 431 F.3d at 454.

[8] In a footnote, the defendants argue that the plaintiff's claim under Title II of the ADA is also barred by the Eleventh Amendment. The Court, however, finds that argument unpersuasive. Indeed, *United States v. Georgia*, 546 U.S. 151, 159 (2006), upon which the defendants rely, does not support their argument. The defendants also cite a case from this Court, *Baker v. Univ. of Texas Health Sci. Ctr. Houston*, CIV.A. H-08-1908, 2011 WL 1549263, at *3-4 (S.D. Tex. Apr. 21, 2011), but, although it is not reflected in the electronic database, court records reveal that that decision was later withdrawn by this Court upon a motion to reargue by the plaintiff in that case.

> **2.** **The §1983 claims against the individual defendants in their individual capacities for violations of procedural and substantive due process, and equal protection.**

To support his procedural and substantive due process claims, the plaintiff alleges, *inter alia*, that the University imposed a series of unreasonable conditions in order for him to resume classes and, when he did not comply with the unreasonable conditions, he was "immediately and involuntarily" withdrawn from the University without an opportunity to be heard.

The Court is of the opinion that, when viewed in the light most favorable to the plaintiff, the facts alleged are sufficient to state plausible claims for procedural and substantive due process violations. Accordingly, the defendants' motion to dismiss those claims is denied. *See Twombly*, 550 U.S. at 563 (when considering a 12(b)(6) motion, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether he will eventually prevail).

The Court also denies the motion to dismiss the plaintiff's equal protection claim. To state a claim for equal protection violation as a "class of one," the plaintiff must establish that: (1) he was intentionally treated differently from others similarly situated; and (2) there was no rational basis for any such difference. *See Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012).

Here, the plaintiff alleges, *inter alia*, that he was "retaliated against, harassed, disciplined . . . intimidated and dismissed from the medical school, all against his will, and differently than those similarly situated medical students." He further alleges that the defendants' actions were the result of personal animus against him and were taken without rational basis. Therefore, the Court finds that these allegations, viewed in the light most favorable to the plaintiff, state a claim for equal protection violation. *See Wilson*, 667 F.3d at 600 (the Fifth Circuit reversed the district

court's decision dismissing an equal protection claim and noted that "[w]e are at the motion to dismiss stage . . . and 'courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint' [and] [a]t this stage, [the defendants'] rebuttals must be ignored and [the plaintiff's] assertions taken as true") (citations omitted).

### 3. The Section 1983 claims for injunctive relief.

The defendants acknowledge that sovereign immunity does not bar the plaintiff from seeking prospective injunctive relief (but not monetary damages) against the state officials in their official capacity. *See Ex parte Young*, 209 U.S. 123, 159-160 (1908); *Kermode*, 496 F. App'x at 491. Nevertheless, the defendants argue that *Ex parte Young* does not apply in this case because the plaintiff is not seeking prospective injunctive relief but, rather, is challenging past discretionary decisions by the University and its officials. The defendants' argument is unpersuasive.

The Court finds that to the extent the plaintiff seeks reinstatement to the University, that would qualify as prospective injunctive relief, and such a claim may proceed against the University and individual defendants in their official capacities. *See Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) ("this circuit has always treated *Ex parte Young* as an appropriate vehicle for pursuing reinstatement to a previous" position).

## VI. CONCLUSION

Based on the foregoing discussion, the Court GRANTS the motion to dismiss: (1) the claims against the University for breach of contract and alleged violation of Chapter 321 of the Texas Health & Safety Code; (2) all the tort and Section 1983 claims against the University and the individual defendants in their official capacities; and (3) the tort claims against the individual

defendants in their individual capacities.[9] The Court DENIES the motion to dismiss the ADA and Rehabilitation Act claims; the procedural and substantive due process and equal protection claims; and the claim against the defendants for injunctive relief, *i.e.*, reinstatement to the University.

It is so **ORDERED**.

SIGNED on this 13th day of August, 2013.

_____
Kenneth M. Hoyt
United States District Judge

---

[9]The Court is of the opinion that since the claims are dismissed on jurisdictional grounds, it would be futile to allow the plaintiff to amend his complaint. Therefore, the claims are dismissed with prejudice.